# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| GinA, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )   1:16-cv-100-NT |
| | ) |
| CITY OF AUGUSTA, et al., | ) |
| | ) |
|     Defendants. | ) |

### ORDER ON PENDING MOTIONS AND AFTER
### REVIEW PURSUANT TO 28 U.S.C. § 1915 AND *COK* WARNING

In her second amended complaint, Plaintiff GinA (*f/k/a* Gina Turcotte) alleges that Defendants City of Augusta, its police department, all of its police officers, William Stokes, Matthew Pouliot, William Bridgeo, Matt Nazar, Royce Watson, and Gregory Roy violated her civil rights and in particular violated her right to fair housing. Second Am. Compl. (ECF No. 14). Plaintiff has also filed a motion for appointment of stand-by counsel (ECF No. 17), and a motion to transfer a state court action to this court (ECF No. 9.)

Plaintiff previously applied for and was granted in forma pauperis status. (ECF Nos. 4, 7.) Consequently, her second amended complaint is subject to screening prior to service of the complaint. 28 U.S.C. § 1915(e)(2).

Following a review of Plaintiff's pleadings, the Court denies Plaintiff's motion for appointment of counsel, denies Plaintiff's motion to transfer, and dismisses Plaintiff's second amended complaint without service on Defendants.

## PROCEDURAL BACKGROUND

Plaintiff filed her original complaint on February 18, 2016, and was granted leave to proceed in forma pauperis on February 18, 2016. On March 2, 2016, Plaintiff filed a motion to transfer. Through her motion to transfer, Plaintiff requests that this Court exercise jurisdiction over a forcible entry and detainer proceeding (FED) regarding an apartment that previously existed at 32 Court Street in Augusta.

On March 16, 2016, the Magistrate Judge, after screening Plaintiff's complaint, recommended dismissal of the complaint without service on Defendants. (ECF No. 10.) On March 17, 2016, Plaintiff filed a motion to amend her complaint, which motion the Court granted on March 22, 2016. On April 8, 2016, Plaintiff filed an amended complaint, and on April 21, 2016, filed a second amended complaint, which is now the operative pleading in this case. (ECF No. 14.)

## CASE SUMMARY

In her second amended complaint, Plaintiff alleges that Defendants discriminated against her and violated her rights to equal protection because of her status as "a disabled, low income homeless white woman." Second Am. Compl. at 17 (ECF No. 14.) Plaintiff's allegations relate a history of living in three separate dwellings in the City of Augusta: 239 Cony Street, 3 Washington Street Place, and 32 Court Street. In particular, Plaintiff complains of Defendants' failure to protect her interest in remaining a tenant in an apartment building formerly located at 32 Court Street. The property, which was once owned by Defendant Gregory Roy, was acquired by the City or the State and demolished as part of the construction of the

Capital Judicial Center. Plaintiff alleges that Defendant Roy misrepresented to her that the property would be available for rent for years to come. In addition, Plaintiff complains of conduct by Defendant Watson and the City's failure to take any actions against Defendant Watson in connection with 239 Cony Street.[1] Plaintiff was evicted from both premises by means of forcible entry and detainer actions that she believes were unfairly decided as part of a conspiracy against her.

Plaintiff also asserts that the Defendants who are or were employed by the City of Augusta and/or the State of Maine when she had housing-related difficulties in Augusta (the City Defendants) engaged in "illegal discrimination and chronic abuses" and failed to "provide her with safe affordable low income housing in Augusta which Congress has promised to protect in 42 USC § 3601 *et seq.*, *inter alia*," "because she is a low income, disabled woman who exercises her constitutionally-protected right to have fair, safe and affordable low income housing." *Id.* at 7 – 9, 13.[2] Plaintiff

---

[1] With respect to Cony Street, Plaintiff asserts that the property experienced flooding, an infestation of sand fleas, and an oil leak, and that Defendant Watson maintained a tenant/employee in the building who harassed Plaintiff. Second Am. Compl. at 44. Plaintiff contends Defendant Watson wrongfully evicted her in retaliation for her report of the oil leak. *Id.* at 45 – 46. She also complains of conduct by Officer Peter Cloutier, who attempted to search her apartment and threatened to obtain a search warrant in January 2012. *Id.* at 46 – 47. She alleges that another officer, Christopher Guay, subjected her to an unlawful traffic stop in February 2012. *Id.* at 48. Washington Street Place was Plaintiff's next dwelling, after a period of homelessness. Plaintiff alleges that she was the victim of thefts and intimidations in this "rooming house," that the owners or managers did not take steps to protect her, and that they successfully evicted her after she complained to code enforcement about the unlicensed operation of a rooming house. *Id.* at 50, 53. In Plaintiff's view, all of these occurrences are part of a prolonged conspiracy to deprive her of fair housing in the City of Augusta.

[2] Plaintiff's second amended complaint includes certain allegations regarding conduct of the Augusta Police Department in 2011 and 2012, which conduct bears no discernable relation to the housing matters raised in Plaintiff's second amended complaint. For instance, Plaintiff states that she was charged with a motor-vehicle violation based on her operation of a vehicle after the Maine Department of Motor Vehicles suspended her license to drive on medical grounds. Second Am. Compl. at 13 – 14. Plaintiff also provides background on events that transpired more than 10 years ago. *Id.* at 40. The Court does not discern any federal claims arising from these allegations.

maintains that her personal experience is part of a "widespread disparate impact against low income, disabled and homeless classes of people in Maine." *Id.* at 15.

## PLAINTIFF'S CLAIMS

In ten counts, Plaintiff asserts that her claims are actionable under Title II of the Americans with Disabilities Act, the Fair Housing Act (three counts); the First Amendment, the Fourteenth Amendment, and 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986. In addition to an award of compensatory and punitive damages, Plaintiff requests, inter alia, a permanent injunction barring the demolition of low income housing, an order requiring Defendants to build new or repair existing low income housing to remedy the past destruction of low income units in the City of Augusta, and "costs to establish and maintain a safe permanent residence for 5 years." *Id.* at 67.

## DISCUSSION

### I. Plaintiff's Motion for Appointment of Counsel

Plaintiff has requested the appointment of a "*Stand-by* Attorney." (ECF No. 17) (emphasis in original). Plaintiff seeks the appointment pursuant to the Fair Housing Act, 42 U.S.C. § 3613(b), which provides that "[u]pon application by a person alleging a discriminatory housing practice …, the court may appoint an attorney for such person." Courts considering such motions generally rely on the legal standard applied to applications for appointment of counsel under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5(f)(1). *See, e.g., Hicks v. Makaha Valley Plantation*

4

*Homeowners Ass'n*, No. CIV. 1:14-cv-00254, 2015 WL 1608454, at *3 (D. Haw. Apr. 9, 2015) (collecting cases).

In this Circuit, a court considering a request for counsel in a Title VII case must weigh three factors: (1) the merits of the plaintiff's case; (2) the efforts by the plaintiff to obtain legal representation; and (3) the plaintiff's financial ability, any one of which factors may be determinative. *Gadson v. Concord Hosp.*, 966 F.2d 32, 35 (1st Cir. 1992). As explained below, Plaintiff's housing discrimination allegations do not support an actionable claim. Because Plaintiff's allegations lack merit, her motion for appointment is denied.

## II. Screening Analysis

Under the federal in forma pauperis statute, federal courts are authorized to waive the filing fees ordinarily required to commence a civil action in order to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); 28 U.S.C. § 1915(a). "[H]owever, Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing'" cases without merit, resulting in substantial burdens on both the courts and prospective defendants. *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). Indeed, in 1996 Congress amended the in forma pauperis statute to authorize[3] district courts to screen and dismiss a case proceeding in forma pauperis not only upon a finding that the case is frivolous or malicious, but also upon

---

[3] In fact, Congress chose mandatory language. *See* 28 U.S.C. § 1915(e)(2) ("the court shall dismiss the case at any time if the court determines that--**(A)** the allegation of poverty is untrue; or **(B)** the action or appeal--**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief.")

5

a finding that the Plaintiff's allegations fail to state a claim or seek monetary relief against a defendant immune from such relief. 28 U.S.C. § 1915(e)(2)(B); Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104–134, 110 Stat. 1321 (April 26, 1996).

Plaintiff's amended complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

## A.  Standard of Review

Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). Following *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the First Circuit has instructed:

> To evaluate the sufficiency of a complaint under Rule 8, we first must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited). We then must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable.

*Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015) (internal quotations and citations omitted). The Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se complaints are construed liberally. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75 (1st Cir. 2014). "The policy behind affording pro se plaintiffs liberal

interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). A pro se plaintiff is nevertheless required to plead facts that are sufficient to state a cause of action. *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980).

B.   **Plaintiff's Claims**

   1.   *Disability Discrimination (Counts I – IV)*

Plaintiff asserts four counts in her second amended complaint based on federal anti-discrimination law: Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (count I), and the Fair Housing Act (FHA), 42 U.S.C. §§ 3601, 3604(f), 3617 (counts II – IV). Plaintiff fails to state a claim under any of these provisions.

Section 12132 of Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff has not only failed to allege facts regarding the denial of participation in any service, program, or activity conducted by Defendants, but also has failed to assert any facts to support the correlation between any such denial and a particular disability. Plaintiff therefore fails to state a claim under Title II.[4]

---

[4] In addition to her housing-related claims, Plaintiff's second amended complaint includes several pages of allegations regarding the suspension of Plaintiff's license to drive. E.g., Second Am. Compl. at 92 – 93. Defendants in this action did not make the suspension decision and did not have authority to overrule the decision. Additionally, Plaintiff's allegations concerning her driver's license have no logical connection with her housing case.

Section 3601 of the FHA states that it is the policy of the United States to provide fair housing. 42 U.S.C. § 3601. This is a statement of policy and does not establish a cause of action. Accordingly, Plaintiff's attempt to assert a claim under § 3601 must fail.

Section 3604(f) "prohibits discriminatory housing practices based on a person's handicap." *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 66 (1st Cir. 2010). Discriminatory housing practices include discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). Discrimination also includes the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped persons] equal opportunity to use and enjoy a dwelling," *Id.* § 3604(f)(3)(B). Relatedly, § 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by," inter alia, section 3604. 42 U.S.C. § 3617.

    a.    *Defendant Roy*

Although Plaintiff is dissatisfied that Defendant Roy did not maintain ownership of 32 Court Street and continue to rent the apartment to Plaintiff, Plaintiff has failed to allege facts which would to support an inference that Defendant Roy engaged in any of the conduct prohibited by the Fair Housing Act. That is, Plaintiff

has not alleged facts from which one could reasonably conclude that Defendant Roy subjected Plaintiff to disadvantageous treatment regarding the terms, conditions, or privileges associated with her rental; that he refused to provide her with a reasonable accommodation that was necessary to afford her equal opportunity to use and enjoy the dwelling in question; that he coerced, intimidated, or threatened Plaintiff; or that he interfered in any way with Plaintiff's rights under the FHA.

   b. *Defendant Watson*

Claims under the FHA are subject to a two-year statute of limitation. 42 U.S.C. § 3613(a)(1)(A). Assuming for the sake of argument that Plaintiff states a claim against Defendant Watson, the claim is clearly barred by the statute of limitation. Indeed, according to her allegations, Plaintiff has not been Defendant Watson's tenant since March 1, 2012. (Second Am. Compl. at 19.) Where, as here, the statute of limitation defense plainly appears on the face of Plaintiff's complaint, dismissal for failure to state a claim is appropriate. *Jones v. Bock*, 549 U.S. 199, 214 – 15 (2007).

   c. *City Defendants*

The City Defendants did not rent or sell a dwelling to Plaintiff. The City Defendants are thus unlikely to be considered proper defendants on Plaintiff's FHA § 3604(f) claim. Regardless, given that the City Defendants did not rent the property to Plaintiff, Plaintiff has not alleged and cannot allege facts that would support a finding that the City Defendants' conduct constitutes a violation of section 3604.

A plaintiff, however, may assert an interference claim under § 3617 against a defendant who did not otherwise violate the FHA in connection with the sale, rental,

9

or management of a housing facility. *Hidden Vill., LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 528-29 (6th Cir. 2013). Theoretically, therefore, Plaintiff could assert an interference claim against the City Defendants. Evidently, the "interference" about which Plaintiff complains is the City's failure to develop or make available another property for the parking area of the Capital Judicial Center, or its failure to intervene on Plaintiff's behalf in housing matters between Plaintiff and her former landlords. Plaintiff's second amended complaint contains no facts from which a person could reasonably conclude that the City's involvement in decisions regarding the Capital Judicial Center property was based in any way on Plaintiff's tenancy, or that it otherwise engaged in interference prohibited by the FHA. Plaintiff thus has failed to state an actionable "interference" claim.[5]

### 2.   42 U.S.C. § 1983 (Counts V, VI, VIII)

Plaintiff alleges that Defendants deprived her of rights secured by the First Amendment, and by the equal protection clause of the Fourteenth Amendment. 42 U.S.C. § 1983 allows a plaintiff to bring a claim for redress against any person acting under color of state law who subjects her or causes her to be subjected to a deprivation of "rights, privileges, or immunities secured by the Constitution," including the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. 42 U.S.C. § 1983. Liability under § 1983 requires state action resulting in the

---

[5] To the extent Plaintiff asserts a claim of interference against the City Defendants based on matters related to her tenancies at either 239 Cony Street or 3 Washington Place, any such claim is time barred because Plaintiff was evicted from the former premises in March, 2012 and from the latter premises in October, 2013. Second Am. Compl. at 19.

deprivation of a federal right. *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 (1st Cir. 2005).

### a. *Defendants Roy and Watson*

Plaintiff's allegations regarding Defendants Roy and Watson do not support a plausible inference that their conduct amounted to state action. First, Defendants' decision to rent to Plaintiff was not state action. Additionally, Defendants' eviction of Plaintiff through the available court process does not constitute state action because Defendants' decisions served their own interest, were not the product of compulsion, were not "joint action" with the state, and did not involve the performance of a "public function" as those concepts are described in related precedent. *Klunder v. Brown Univ.*, 778 F.3d 24, 31 (1st Cir. 2015).

### b. *City Defendants*

Although Plaintiff's allegations regarding the conduct of the remaining Defendants describe state action, Plaintiff has not alleged conduct that deprived Plaintiff of a federal right. Plaintiff's allegations simply do not support a plausible inference that her race, sex, disability, or speech was a factor in the City Defendants' conduct regarding her housing, or that the City's agents intentionally targeted Plaintiff for disadvantageous treatment. *Donovan v. City of Haverhill*, 311 F.3d 74, 77 (1st Cir. 2002) (explaining that an equal protection claim requires a showing that the plaintiff was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). More specifically, the second

amended complaint contains no facts that would support a claim that the City engaged in any action with the intent to harm Plaintiff.

### 3.   42 U.S.C. § 1981 (Count VII)

Plaintiff seeks relief under 42 U.S.C. § 1981, which prohibits race-based discrimination. "To state a claim under § 1981, a plaintiff must show that (1) she is a member of a racial minority; (2) the defendant discriminated against her on the basis of her race; and (3) the discrimination implicated one or more of the activities listed in the statute, including the right to make and enforce contracts." *Hammond v. Kmart Corp.*, 733 F.3d 360, 362 (1st Cir. 2013). Plaintiff has not alleged that she is a member of a racial minority, but she does assert that she is white. Assuming, arguendo, that a white person can assert a claim under § 1981 for denial of benefits enjoyed by white citizens,[6] Plaintiff has not alleged any facts to support a claim that she was subjected to unequal treatment based on race. Plaintiff, therefore, has failed to state an actionable section 1981 claim. *Lebron v. Puerto Rico*, 770 F.3d 25, 30 n.7 (1st Cir. 2014).

### 4.   42 U.S.C. §§ 1985(3), 1986 (Counts IX – X)

Title 42 U.S.C. §§ 1985(3) and 1986 prohibit one from conspiring to deprive one or more persons of the equal protection of the laws. The statutes also authorize civil

---

[6] 42 U.S.C. § 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

12

rights actions against the conspirators and persons with knowledge of and power to prevent or aid in preventing such a conspiracy who fail to act. "In order to demonstrate the existence of a conspiracy under § 1985, a plaintiff must prove that the conspiracy was motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus," and "that the conspiracy was aimed at interfering with protected rights." *Maymi v. Puerto Rico Ports Auth.*, 515 F.3d 20, 30 (1st Cir. 2008) (internal quotation marks omitted). Plaintiff has failed to allege facts that could generate a plausible inference that Defendants conspired to interfere with Plaintiff's protected rights based on her membership in a protected class.[7] Plaintiff's failure to allege a claim under § 1985 necessarily precludes a claim under § 1986 claim as well. *Id.* at 31.

### 5. *Request for relief for third parties*

Plaintiff also attempts to assert a claim on behalf of indigent people who lack housing. As a pro se litigant who is not a licensed attorney, Plaintiff cannot maintain an action on behalf of other individuals. *Crippa v. Johnston*, 976 F.2d 724 (1st Cir. 1992); 28 U.S.C. § 1654.

---

[7] Plaintiff's allegations concerning Defendant Stokes appear to be the focus of her conspiracy theory. Plaintiff alleges that Defendant Stokes authorized an investigation in September 2013 regarding Plaintiff's "legal advocacy work with MAINE TENANTS JUSTICE LEAGUE, Inc.," when Defendant Stokes was an assistant attorney general. *Id.* at 54. Additionally, Defendant Stokes was the Mayor of Augusta and became a Maine superior court justice when the City's acquisition of the Court Street building were transpiring. *Id.* at 75 ("*and why did Mayor Stokes just get nominated to be a superior court judge in the very courthouse they are going to destroy my bldg to make a parking lot for???? did he sell my block for the judgeship??? i sure think so!*"). Plaintiff's ruminations and suspicions are not sufficient to state a plausible conspiracy claim because Defendant Stokes' professional career development bears no plausible relationship to Plaintiff's housing claims. Similarly, Plaintiff attempts to raise an inference that there was a municipal conspiracy to do her harm based, in part, on police conduct. The Court cannot discern any plausible connection between the police matters Plaintiff's describes and the difficulty Plaintiff has had securing and maintaining housing.

## CONCLUSION

Following review under 28 U.S.C. § 1915(e)(2), Plaintiff's case is hereby **DISMISSED**. Plaintiff's motion for stand-by counsel is **DENIED**. Plaintiff's motion to transfer (ECF No. 9) is **DENIED**.[8]

I now place GinA on **NOTICE** that filing restrictions "may be in the offing." *Cok v. Family Court of Rhode Island*, 985 F.2d 32, 35 (1st Cir. 1993). This represents a "cautionary order" of which Cok speaks. *Id.* Groundless and frivolous filings will not be tolerated.

**SO ORDERED**.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 24th day of May, 2016.

---

[8] The denial of Plaintiff's request to transfer a state court proceeding to incorporate it into this case is based on the determination that this case is subject to summary dismissal.